## CAPPEL v. EVANSVILLE OIL CORPORATION, Inc., et al.
### No. 6018.

Court of Appeal of Louisiana. Second Circuit.

March 6, 1940.

Dickson & Denny, of Shreveport, for appellant.

Jackson & Mayer, of Shreveport, for appellee.

HAMITER, Judge.

The Evansville Oil Corporation, a defendant herein, has been for several years and is now maintaining and operating a refinery in Webster Parish, Louisiana, and selling its manufactured products on a cash basis.

For a number of months prior to May 24, 1938, N. S. Cappel, who is plaintiff's brother and the owner and operator of the Trio Service Station in Alexandria, Louisiana, purchased quantities of gasoline and kerosene from the named defendant. Some of the checks given for the purchases were unpaid and this brought about a strained business relationship between those parties.

On the mentioned date of May 24, 1938, the defendant oil company entered into a written contract with N. S. Cappel and plaintiff, T. L. Cappel, under which it agreed to a credit allowance to the Trio Service Station up to $400 in the purchase of petroleum products; and as security

therefor it received a certificate of deposit for that amount issued by the Security Banking Company of Pineville, Louisiana, in the name of T. L. Cappel.

Thereafter, from time to time through July 10, 1938, the truck of the Trio Service Station, driven by C. W. Kelly, appeared at the refinery and obtained gasoline and kerosene. Specifically, there were twenty-two trips. On each occasion an invoice was issued, comprising an original and two carbon copies, listing the products sold, their prices and the tax due thereon; and, it was signed by the driver Kelly opposite the printed words, "Customer sign here", and also signed by the loading employee on the line bearing the printed statement, "Employee receiving money sign here". A carbon copy of the invoice, containing those signatures, was given to Kelly, while the employee of defendant retained the original and the remaining copy.

In October, 1938, T. L. Cappel, the plaintiff herein, wrote to the defendant oil company and made inquiry regarding the status of his brother's account. It replied that the debtor owed an amount in excess of the $400 credit allowance that was secured by the certificate of deposit; and it enclosed in the reply letter an itemized statement of the asserted indebtedness.

Later, T. L. Cappel instituted this suit, praying that the Evansville Oil Corporation be ordered to return his certificate of deposit, and, in the alternative, that he have judgment against such defendant for its value. He alleges the execution of the aforementioned contract of May 24, 1938, and that " * * * the said Trio Service Station did business with the Evansville Oil Corporation, Inc., but that same was cash business and that they did not have any necessity to use the credit called for in said contract, and that said business extended from May 25, 1938, through July 10, 1938, but all items purchased were paid for in cash and that after July 10, 1938, business between the said defendant corporation and the Trio Service Station ceased."

A further allegation of the petition is that " * * * there is no indebtedness existing between the said N. S. Cappel and the defendant Company arising out of said contract of date May 24, 1938, and that said contract has wholly terminated and ceased."

The Security Banking Company of Pineville, Louisiana, was named a defendant and cited. N. S. Cappel, plaintiff's brother and the purchaser of the products, was not made a party to the proceedings.

Issue with the Security Banking Company was never joined, either by means of an answer or a preliminary default.

The Evansville Oil Corporation, to whom we shall refer hereinafter as defendant, admits in its original and supplemental answers the contract's signing, but denies the above quoted allegations of the petition. Further answering, it lists in detail various charges and credits relating to the account of the Trio Service Station or N. S. Cappel and avers a balance due of $550.09.

The case was tried on its merits and judgment was rendered, as defendant prayed, rejecting the demands of plaintiff and dismissing the suit. The latter appealed.

The pleadings in the case furnish only the question of whether or not plaintiff is entitled to the return of the certificate of deposit. If any indebtedness presently exists from the transactions of the Trio Service Station with defendant occurring between May 24, 1938 and July 10, 1938, regardless of the amount thereof, he cannot obtain the relief sought. The correctness or incorrectness of the balance claimed by defendant is not an issue in the case and is not herein passed upon.

In support of his demands, plaintiff offered the testimony of N. S. Cappel and the driver Kelly. This is to the effect that payment was made for each truckload of fuel as it was obtained. Additionally, he filed in evidence and strongly relies on the numerous invoices given to Kelly, each of which bears the aforementioned signatures; and he urges that these constitute receipts and show payment in full for all products purchased.

When defendant sought to introduce testimony in explanation of the signatures on the invoices, plaintiff objected strenuously and claimed its inadmissibility on the ground that it was in contradiction of written instruments and no error or fraud had been alleged. The objection was overruled, although it was made general so as to apply to all testimony of like character, and the evidence admitted. The ruling, we think, was correct. A receipt given for money paid, being a mere acknowledgment of the payment, is not conclusive between the parties; and it is subject to parol explanation or contradiction. Gray v. Lonsdale, 10 La.Ann. 749; Borden v. Hope, 21 La.Ann. 581; Otis Elevator Co. v. South-

ern Hat Co., 11 La.App. 699, 124 So. 696; Johnson v. New Orleans Electric Engineering Co., La.App., 179 So. 121.

It is the testimony of the numerous defense witnesses, who are employees of defendant company, that payment was not made for each load as it was received. The signatures of the employees appearing on the invoices, they explain, were placed there for the purpose of identifying the persons loading the truck and also for the driver's benefit should he be stopped by an officer of the State engaged in the enforcement of the gasoline tax law; and such were not intended to show payment for the products listed in the invoices.

The defense evidence further discloses that following the agreement of May 24, 1938, Kelly obtained three successive loads of fuel under and pursuant to the mentioned credit arrangement. The original invoices for these credit purchases, the amount of which totaled $413.47, were placed in a filing cabinet at the refinery. When securing the fourth load, and also each subsequent one, he presented defendant's attending employee with funds sent by the Trio Service Station. These were not in payment of the fuel then being received, but were in partial discharge of the indebtedness existing from prior sales. The employee applied the money to the oldest unpaid purchases and gave to Kelly a memorandum showing such application. As an invoice was paid, it and the money were placed in an envelope and sent to the office of defendant in Shreveport. Usually three of these unpaid statements, listing an aggregate indebtedness of approximately $400, were in the filing cabinet during the period of the transactions. On one occasion an employee of defendant withdrew gasoline from Kelly's truck after it had been loaded, the reason for this being to keep the existing indebtedness within the $400 credit allowance.

In the early part of December, 1938, after the institution of this suit, two of defendant's employees journeyed to Alexandria, Louisiana, to discuss the account with Kelly. He, they testified, then stated that he had hauled loads of gasoline from defendant's plant for which no payment was made when it was obtained. Kelly denied having made that statement, and said: "I did not tell them anything, told them that I did not have time to discuss it."

The discussion given above, except as it concerns the admissibility of the defense evidence, discloses that the case presents only an issue of fact. The trial judge resolved the dispute in favor of defendant, commenting, as his written opinion shows, that,—

"The fact that this was the only credit account and that all other sales were for cash we think, clearly explains the signatures of the employees to the tickets which were in evidence.

"The circumstances which most strongly influences our decision in this case is that the Trio Service Station should immediately after securing a line of credit start the next day paying cash and continue on a cash basis during the remainder of their business relations. Particularly is this true when just prior to this time they were unable to pay for the gasoline as it was purchased. It does not seem consistent to us that this would have been done.

"On the other hand, it is natural and logical that the Trio Service Station would secure gasoline on this credit, and as cash was secured from sales, make payments on their old accounts."

It is to be noticed that plaintiff does not deny that defendant sold and delivered the products described in the invoices. He pleads only that the account has been paid. The burden of proof, therefore, is with him; and in view of this and of the circumstances pointed out by the trial judge, we are unable to say that the decision rendered on the factual question presented is manifestly incorrect.

The judgment is affirmed.